UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY FORRESTER,

        Plaintiff,

    -against-

NATIONAL VOLUNTARY ORGANIZATIONS
ACTIVE IN DISASTER, INC., MICHAEL
MANNING, MARK J. SMITH, and WARREN
MILLER,

        Defendants.

Case No. 1:21-cv-00422-JGK

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Daniel Gomez-Sanchez
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747
(631) 247-4700
dsgomez@littler.com

Adriana H. Foreman
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
(212) 583-9600
aforeman@littler.com

**TABLE OF CONTENTS**

**PAGE**

I.  PRELIMINARY STATEMENT ............................................................................ 1

II.  STATEMENT OF FACTS ................................................................................ 2

III.  ARGUMENT ................................................................................................ 4

    A.  This Court Should Dismiss The Action For Lack Of Personal Jurisdiction .......... 4

        i.  Plaintiff Cannot Establish Personal Jurisdiction Over the
            Defendants Pursuant To New York Law ...................................... 5

            a.  *Defendants Are Not Subject to New York's General
                Jurisdiction Statute* ...................................................... 5

            b.  *Defendants Are Not Subject to New York's Long-Arm
                Statute* ...................................................................... 8

                (1)  Plaintiff Cannot Establish Jurisdiction Over
                     Defendants Pursuant to CPLR § 302(a)(1). ...................... 9

                (2)  Plaintiff Cannot Establish Jurisdiction Over
                     Defendants Pursuant to CPLR § 302(a)(3). .................... 12

        ii.  The Exercise of Jurisdiction Is Not Reasonable and Would Violate
            Due Process and Fairness Requirements ................................. 13

    B.  If This Court Finds That There Is Personal Jurisdiction, Then The
        Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim ........ 15

        i.  Plaintiff Has Failed to State a Cognizable Claim of Retaliation
            Against Defendants NVOAD, Miller, and Manning ............................. 16

        ii.  Plaintiff Has Failed to State a Valid Aiding and Abetting Claim
            Against Smith ................................................................. 19

         iii.  Plaintiff Has Failed to State a Valid *Prima Facie* Tort Claim
            Against Defendants Smith and Miller .................................... 20

IV.  CONCLUSION ................................................................................................ 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................16

*Backer v. Cooperatieve Rabobank U.A.*,
    338 F. Supp. 3d 222 (S.D.N.Y. 2018)........................................................................21

*Bah v. Apple Inc.*,
    19-cv-3539 (PKC), 2020 WL 614932 (S.D.N.Y. Feb. 10, 2020).............................4

*Bresciani v. Leela Mumbai-A-Kempinski Hotel*,
    311 F. Supp. 2d 440 (S.D.N.Y. 2004).......................................................................5

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
    No. 09-cv-6148 (VM)(MHD), 2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July
    17, 2012) .....................................................................................................................9

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)................................................................................13, 14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)...................................................................................................6

*Data-Stream AS/RS Techs., L.L.C. v. ACEquip Ltd.*,
    02-CV-2089 (RWS), 2002 U.S. Dist. LEXIS 13461 (S.D.N.Y. July 24, 2002)......8

*DeLorenzo v. Viceroy Hotel Grp., LLC*,
    757 F. App'x 6 (2d Cir. 2018)...............................................................................5, 9

*Dixon v. Int'l Fed'n of Accountants*,
    416 F. App'x 107 (2d Cir. 2011)..............................................................................19

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
    873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013)........17

*Gilbert v. Indeed, Inc.*,
    No. 20-cv-3826 (LJL), 2021 U.S. Dist. LEXIS 9717 (S.D.N.Y. Jan. 19, 2021) .....8

*Goonewardena v. New York Workers Comp. Bd.*,
    258 F. Supp. 3d 326 (S.D.N.Y. 2017), *aff'd*, 788 F. App'x 779 (2d Cir. 2019) .....16

*Gucci Am., Inc. v. Bank of China*,
    768 F.3d 122 (2d Cir. 2014).................................................................................6, 8

*Hernandez v. Weill Cornell Med. Coll.*,
  2015 NY Slip Op 51022(U), 48 Misc. 3d 1210(A), 18 N.Y.S.3d 579 (N.Y.
  Sup. Ct. July 6, 2015)...........................................................................................17

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)...............................................................................................13

*Jonas v. Estate of Leven*,
  116 F. Supp. 3d 314 (S.D.N.Y. 2015)..................................................................11

*Kulas v. Adachi*,
  96 Civ. 6674 (MBM), 1997 U.S. Dist. LEXIS 6868 (S.D.N.Y. May 12, 1997) ...................11

*Landau v. New Horizon Partners, Inc.*,
  2003 U.S. Dist. LEXIS 15999 (S.D.N.Y. Aug. 22, 2003) .....................................12

*Madison Capital Mkts., LLC v. Starneth Europe B.V.*,
  No. 15-CV-7213, 2016 U.S. Dist. LEXIS 112687 (S.D.N.Y. Aug. 23, 2016)........9

*Malmsteen v. Universal Music Grp., Inc.*,
  No. 10-CV-03955 (PAE), 2012 U.S. Dist. LEXIS 82969 (S.D.N.Y. June 14,
  2012) .....................................................................................................................7

*Manoharan v. Columbia Univ. College of Physicians & Surgeons*,
  842 F.2d 590 (2d Cir. 1988)..................................................................................17

*Margrabe v. Sexter & Warmflash, P.C.*,
  353 F. App'x 547 (2d Cir. 2009) ...........................................................................21

*McGee v. Int'l Life Ins. Co.*,
  355 U.S. 220 (1957)...............................................................................................14

*McHenry v. Fox News Network, LLC*,
  2020 U.S. Dist. LEXIS 238582 (S.D.N.Y. Dec. 18, 2020) ...................................20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996)....................................................................................14

*Moazzaz v. Metlife, Inc.*,
  No. 19-CV-10531 (JPO), 2021 U.S. Dist. LEXIS 40776 (S.D.N.Y. Mar. 4,
  2021) (Oetken, J.) .......................................................................................17, 18, 19

*Mones v. Com. Bank of Kuwait*,
  502 F. Supp. 2d 363 (S.D.N.Y. 2007)....................................................................7

*Moore v. Verizon*,
  No. 13-cv-6467 (RJS), 2016 U.S. Dist. LEXIS 16201 (S.D.N.Y. Feb. 5, 2016) ...................20

*Philpot v. Kos Media LLC*,
No. 16-CV-01523 (AT) (BCM), 2017 U.S. Dist. LEXIS 62135 (S.D.N.Y.
Apr. 21, 2017) ............................................................................................................7

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
507 F.3d 117 (2d Cir. 2007)........................................................................................2

*Rush v. Savchuk*,
444 U.S. 320 (1980)...................................................................................................15

*Trisvan v. Heyman*,
305 F. Supp. 3d 381 (E.D.N.Y. 2018) ......................................................................12

*Wallace Church & Co. v. WyattZier, LLC*,
No. 1:20-cv-01914-CM, 2020 U.S. Dist. LEXIS 135529 (S.D.N.Y. July 30,
2020) ...........................................................................................................................6

*Xiu Feng Li v. Hock*,
371 F. App'x 171 (2d Cir. 2010) .............................................................................4, 5

*Yousef v. Al Jazeera Media Network*,
No. 16-cv-6416 (CM), 2018 U.S. Dist. LEXIS 49614 (S.D.N.Y. Mar. 22,
2018) .........................................................................................................................10

**Statutes**

New York Civil Practice Law ...............................................................................................5

**Other Authorities**

N.Y.C.P.L.R. § 301............................................................................................................5, 9

N.Y.C.P.L.R. § 302...............................................................................................................5

N.Y.C.P.L.R. § 302(a) .........................................................................................................9

N.Y.C.P.L.R. § 302(a)(1)........................................................................................9, 11, 12

N.Y.C.P.L.R. § 302(a)(3).....................................................................................9, 12, 13

Fed. R. Civ. P. 4(k)(1)(A) ....................................................................................................4

Fed. R. Civ. P. 12(b) ...........................................................................................................2

N.Y.C. Admin. Code § 8-107 ...................................................................................*passim*

Rule 12(b)(2)........................................................................................................................4

I.      **PRELIMINARY STATEMENT**

Plaintiff Gregory Forrester ("Plaintiff") is the former President and Chief Executive Officer ("CEO") of National Voluntary Organizations Active in Disaster, Inc. ("NVOAD"), a not-for-profit organization based in Virginia.  Plaintiff brings this action under the New York City Human Rights Law ("NYCHRL") alleging a retaliatory termination claim against Defendants NVOAD, Michael Manning, and Warren Miller; an aiding and abetting claim against Defendant Mark Smith; and *prima facie* tort claims against Miller and Smith.

Defendants move to dismiss the Complaint in its entirety.  First, the Complaint must be dismissed because this Court lacks personal jurisdiction over Defendants.  There is no evidence establishing that Defendants were engaged in continuous and systematic business within New York ("N.Y.") sufficient for this Court to exercise general jurisdiction over Defendants.  Further, the Court cannot assert specific jurisdiction over Defendants because they have not purposefully availed themselves in N.Y.  Finally, exercising jurisdiction over Defendants is incompatible with due process.  Thus, the Complaint should be dismissed for lack of personal jurisdiction.

Second, the Complaint must be dismissed for failure to state a plausible claim.  The crux of Plaintiff's Complaint is his erroneous belief that he was dismissed from his employment with NVOAD because he had proposed policies that would have helped the organization increase engagement of BIPOC/LatinX nonprofit organizations, correct equity issues within its membership structure, and secure the financial viability of the 50-year-old organization.  However, such proposals for diversity are not protected activity that can maintain a retaliation claim under the NYCHRL.  Accordingly, Counts I and II should be dismissed because NVOAD, Manning, and Miller did not engage in unlawful discriminatory conduct and thus Plaintiff could not have engaged in protected activity.  Additionally, there is no causal connection between Plaintiff's alleged

complaints and his termination.  As to Count III, Plaintiff's aiding and abetting claim against Smith fails because he cannot show that there was unlawful discriminatory conduct or that Smith purposefully participated in any alleged conduct.  Finally, Counts IV and V, which allege a *prima facie* tort against Smith and Miller should also be dismissed because the Complaint is devoid of any factual allegations showing that Defendants acted solely with malice.

For these reasons discussed more fully below, this Court should dismiss the Complaint in its entirety against all Defendants.

## II.   STATEMENT OF FACTS[1]

Plaintiff began his employment at NVOAD as its President and CEO on November 14, 2016.  *See* Compl. (Dkt. 1, Ex. A) ¶ 26.  At the time, Plaintiff was based in N.Y. but was expected to, and did, commute to NVOAD's office in Alexandria, Virginia.  *See* Declaration of Manning, dated April 8, 2021 ("Manning Decl.") ¶ 10.  During Plaintiff's employment, he was not required to conduct business in N.Y. on NVOAD's behalf.  Manning Decl. ¶ 13.  Indeed, NVOAD never held any Board of Director meetings in N.Y.  Manning Decl. ¶ 8.

In April 2020, Plaintiff was quoted in "Bloomberg Green" stating that the American Red Cross did not anticipate the COVID-19 pandemic or had the resources to respond to the ongoing pandemic.  Compl. ¶ 35.  Plaintiff alleges that Smith emailed members of the Board of Directors for NVOAD (the "Board") stating that the American Red Cross, Smith's employer, "had been unfairly singled out for criticism and asked the Board to consider an official reprimand of

---

[1]      For purposes of this motion only, Defendants presume that the well-pled, non-conclusory allegations stated in the Complaint will be construed as true. *See Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507 F.3d 117, 121 (2d Cir. 2007) (for purposes of a Fed. R. Civ. P. 12(b) motion, a court should "tak[e] as true the factual allegations of the complaint, but giv[e] no effect to legal conclusions couched as factual allegations").

[Plaintiff]."   Compl. ¶ 36.   Plaintiff alleges that in June 2020 the Board issued Plaintiff a "Memorandum of Record Verbal Coaching Session", and that Smith disseminated the contents of the Board discussion concerning Plaintiff's discipline and the Memorandum to his colleagues at the American Red Cross.  Compl. ¶¶ 37-43.

Plaintiff also alleges that in June 2020 he recommended to the Board that NVOAD form an Advisory Board "to further increase professional representation and diversity, equity, and inclusion as there was no membership category that allowed for smaller organizations representing BIPOC (Black, indigenous, and people of color), LatinX, or Native American/Tribal organizations with both a voice and a vote on the Board of Directors."  Compl. ¶ 44.  In support of this goal, Plaintiff claims he coordinated a presentation with Annie Loyd for NVOAD that took place on June 23, 2020, which he hosted virtually from his home in New York City.  Compl. ¶¶ 46-49.

In introducing Ms. Loyd, Plaintiff utilized the phrase "my white privilege."  Compl. ¶ 50. Miller, an African American male, complained that Plaintiff's use of the phrase "my white privilege" in introducing Ms. Loyd was "disrespectful, offensive and very insensitive."  Compl. ¶ 53.  Miller further stated that, he took great offense to his use of that language and that Plaintiff's failure to understand cultural and racial sensitivity was challenging to the members.  Compl. ¶ 54.

In or around late June or early July 2020, Plaintiff alleges that he complained to Jeffrey Worley, counsel for NVOAD, that Miller's actions were harassment due to Plaintiff's complaint about Smith's disclosure of the Memorandum, and also that he believed it constituted a hostile work environment on account of his race and ethnicity.  Compl. ¶¶ 61-63.  Worley told Plaintiff he would make "recommendations to the task force" regarding his complaints.  Compl. ¶ 64.  An investigation was promptly conducted and the Board issued a conclusion that Plaintiff was not subjected to harassment or retaliation.  Compl. ¶¶ 64-67.

On December 4, 2020, the Board voted to remove Plaintiff as President and CEO of NVOAD.  Manning Decl. ¶ 15.  Smith resigned from the Board on June 22, 2020 and was not involved in the decision to terminate Plaintiff.  Manning Decl. ¶ 16; Declaration of Mark J. Smith, dated April 8, 2021 ("Smith Decl.") ¶ 2.  On December 7, 2020, NVOAD officially terminated Plaintiff's employment.  Compl. ¶ 77.

On December 21, 2020, Plaintiff filed a Summons and Verified Complaint in the Supreme Court of the State of New York, County of New York, which was subsequently removed to this Court.  (Dkt. 1).

## III.   ARGUMENT

### A.   <u>This Court Should Dismiss The Action For Lack Of Personal Jurisdiction</u>

This Court cannot exercise personal jurisdiction over Defendants because it lacks both general jurisdiction over them, as well as specific jurisdiction based on the allegations in Plaintiff's Complaint.  Personal jurisdiction may be exercised over a defendant only if they are "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  FED. R. CIV. P. 4(k)(1)(A).  On a 12(b)(2) motion to dismiss, the "plaintiff carries the burden of demonstrating that jurisdiction exists."  *Xiu Feng Li v. Hock*, 371 F. App'x 171, 173-74 (2d Cir. 2010).  Although courts must accept the plaintiff's allegations as true, courts are authorized to decide a Rule 12(b)(2) motion to dismiss on the basis of affidavits alone.  *Bah v. Apple Inc.*, 19-cv-3539 (PKC), 2020 WL 614932, at *7-8 (S.D.N.Y. Feb. 10, 2020) ("A district court may rely on affidavits without converting a Rule 12(b)(2) motion into a motion for summary judgment.").

To resolve a motion to dismiss for lack of personal jurisdiction, this Court must first determine whether there is jurisdiction over Defendants under N.Y. law.  *Xiu Feng Li*, 371 F. App'x at 174.  If there is a sufficient factual predicate for jurisdiction under N.Y. law, then this

Court must determine whether exercising jurisdiction "is consistent with federal due process requirements." *Id.*

### i.   Plaintiff Cannot Establish Personal Jurisdiction Over the Defendants Pursuant to New York Law

N.Y. law provides for both general and specific personal jurisdiction. Specifically, Plaintiff must "demonstrate that . . . Defendants were either (1) 'present' and 'doing business' within the meaning of New York Civil Practice Law and Rules ("CPLR") § 301, or (2) that they committed acts within the scope of N.Y.'s long-arm statute, CPLR § 302." *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiff contends that jurisdiction is proper because N.Y. courts are of "general jurisdiction and the Plaintiff was employed and conducted business on behalf of defendant NVOAD." Compl. ¶ 7. As further described below, this is insufficient to establish jurisdiction over Defendants.

### a.   *Defendants Are Not Subject to New York's General Jurisdiction Statute*

Section 301 of the CPLR allows courts to exercise general jurisdiction over "persons, property, or status as might have been exercised heretofore." N.Y.C.P.L.R. § 301. Under this provision, Defendants are amenable to suit in N.Y. if there is "such a continuous and systematic course of 'doing business' [in N.Y.] that a finding of its 'presence' in this jurisdiction is warranted." *Bresciani v. Leela Mumbai-A-Kempinski Hotel*, 311 F. Supp. 2d 440, 444 (S.D.N.Y. 2004). Courts may consider "whether the defendant maintains offices and bank accounts, employs agents, and regularly solicits business in New York." *Id.* However, even having fairly substantial contacts to the state can fail this test, as the defendants "must be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Id.* The relevant time period when determining whether the defendant was "doing business" in N.Y. is "at the time

the complaint was filed," rather than at the time that the cause of action arose.  *Wallace Church &*

*Co. v. WyattZier, LLC*, No. 1:20-cv-01914-CM, 2020 U.S. Dist. LEXIS 135529, at *14 (S.D.N.Y.

July 30, 2020).

     The Complaint does not allege, and Plaintiff cannot establish, that NVOAD was engaged

in continuous and systematic business in N.Y.  NVOAD is incorporated in Virginia and currently

has its principal place of business in the State of Louisiana.  Compl. ¶¶ 11-12; Notice of Removal

(Dkt. 1) ¶ 29.  During Plaintiff's tenure as CEO, NVOAD also did not hold any board meetings in

N.Y.  Manning Decl. ¶ 8.  The only connection to N.Y. that Plaintiff raises in the Complaint is that

(i) NVOAD has a member in N.Y. ("New York VOAD"); (ii) NVOAD employed two N.Y.

residents, including Plaintiff; and (iii) Plaintiff conducted business on behalf of NVOAD.  Compl.

¶¶ 7, 23-24, 32.  This is far from the continuous and systematic contacts necessary to find general

jurisdiction.

     First, courts generally disapprove of permitting general jurisdiction over a corporation

because they were doing business through a local branch office in the forum.  *Gucci Am., Inc. v.*

*Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014).  Similarly, NVOAD should not be subject to

general jurisdiction merely because the national organization has a state and territorial member in

N.Y., especially when that member was not specifically conducting business for NVOAD.

Manning Decl. ¶ 9.  Further, the Supreme Court has stated that a "corporation that operates in

many places can scarcely be deemed at home in all of them."  *Daimler AG v. Bauman*, 571 U.S.

117, 139 n.20 (2014).  NVOAD has state and territorial members in fifty-six locations.  Manning

Decl. ¶ 9; Declaration of Warren Miller, dated April 8, 2021 ("Miller Decl.") ¶ 3.  Therefore, New

York VOAD alone cannot establish personal jurisdiction over NVOAD.

Second, at the time the suit was filed, NVOAD employed only one individual, the Director of Operations, who lives in N.Y.  The relevant inquiry is not whether the employees of a corporation reside in N.Y. "but of what they did [there,] of the acts they performed [there] for the corporation and in connection with its business."  *Malmsteen v. Universal Music Grp., Inc.*, No. 10-CV-03955 (PAE), 2012 U.S. Dist. LEXIS 82969, at *13 (S.D.N.Y. June 14, 2012).  The primary duties of the Director of Operations are to manage the day-to-day operations of the national headquarters, which includes financial oversight, event logistics, and communications. Manning Decl. ¶ 6.  To ensure that NVOAD adequately and efficiently serves disaster survivors, she may communicate with members and organizations across the United States.  *Id.*  However, her residency in New York is immaterial to NVOAD's mission of effectively delivering services to disaster survivors as this position could be administered anywhere in the United States.  *Id.* Thus, this employee alone is insufficient to exercise general jurisdiction over NVOAD.  *See Philpot v. Kos Media LLC*, No. 16-CV-01523 (AT) (BCM), 2017 U.S. Dist. LEXIS 62135, at *15 (S.D.N.Y. Apr. 21, 2017) (finding that a few employees residing in N.Y. does not render the employer subject to general jurisdiction in that state).  Further, N.Y. courts exercise general jurisdiction when there is a culmination of facts that show the corporation was engaged in business *in* N.Y.  *See, e.g.*, *Mones v. Com. Bank of Kuwait*, 502 F. Supp. 2d 363, 372 (S.D.N.Y. 2007) (finding that maintaining physical offices in N.Y. and paying employees to perform necessary functions was enough to confer general personal jurisdiction).  Thus, one N.Y. employee is insufficient to subject NVOAD to general jurisdiction.

Third, Plaintiff's allegations that he directed and controlled NVOAD while serving as the President and CEO falls short in this analysis.  As explained above, the relevant time period for examining general jurisdiction is at the time the Complaint is filed.  When the Complaint was filed,

7

Plaintiff was no longer NVOAD's employee.  Thus, any activities Plaintiff performed for NVOAD are irrelevant.  *See Data-Stream AS/RS Techs., L.L.C. v. ACEquip Ltd.*, 02-CV-2089 (RWS), 2002 U.S. Dist. LEXIS 13461, at *15 (S.D.N.Y. July 24, 2002) (finding a former employee's actions on behalf of the corporation irrelevant because he left the company before the suit was commenced).

Finally, Plaintiff has provided no other evidence to show that NVOAD engaged in any business in N.Y. that would render the organization "at home in the forum."  *Gucci Am, Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (finding a defendant was not "at home in the forum" where it had branch offices but conducted a small portion of its business in N.Y.).  Thus, general jurisdiction cannot and should not be exercised over NVOAD.

Similarly, general jurisdiction cannot be established over Manning, Miller, and Smith.  To exercise general jurisdiction over a nonresident individual, they must be doing business in N.Y. individually, rather than on behalf of a corporation.  *Gilbert v. Indeed, Inc.*, No. 20-cv-3826 (LJL), 2021 U.S. Dist. LEXIS 9717, at *72 (S.D.N.Y. Jan. 19, 2021).  Indeed, as established in the Complaint and confirmed by Defendants' declarations, none of the individual Defendants live in N.Y. and Plaintiff has offered no evidence to indicate that they individually engaged in business in N.Y.  Compl. ¶¶ 13, 16, 20.  Thus, this Court cannot exercise general jurisdiction over Manning, Miller, and Smith.

### b.      *Defendants Are Not Subject to New York's Long-Arm Statute*

Plaintiff's implied argument that specific jurisdiction exists under N.Y.'s long-arm statute also fails because there is insufficient evidence of purposeful contacts within the state of N.Y. Section 302 of the CPLR provides four grounds in which to assert specific personal jurisdiction: (1) transacting business within the state or supplying services in the state; (2) committing a tortious act within the state; (3) committing a tortious act without the state causing injury to person or property within the state if he (i) regularly does business in the state, or (ii) should reasonably

expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) using or possessing real property within the state.  N.Y.C.P.L.R. § 302(a).  Unlike CPLR § 301, an analysis under section 302(a) focuses on the business contacts in the forum state at the time the cause of action arose, rather than when the suit is commenced. *Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09-cv-6148 (VM)(MHD), 2012 U.S. Dist. LEXIS 188295, at *53-54 (S.D.N.Y. July 17, 2012).  Given that Defendants do not own any property in N.Y. (*see* Manning Decl. ¶ 2; Smith Decl. ¶ 3; Miller Decl. ¶ 2) and Plaintiff does not allege that Defendants committed any tortious acts within the state of N.Y., the only relevant grounds for purposes of this analysis are CPLR §§ 302(a)(1) and 302(a)(3).

### (1)  Plaintiff Cannot Establish Jurisdiction Over Defendants Pursuant to CPLR § 302(a)(1).

To establish jurisdiction pursuant to CPLR § 302(a)(1), plaintiffs must show that the (1) defendant transacts any business in N.Y. and (2) plaintiff's cause of action arises from that business activity.  *DeLorenzo v. Viceroy Hotel Grp., LLC*, 757 F. App'x 6, 9 (2d Cir. 2018).  Transacting business in the forum is found when defendants purposefully avail themselves of the privilege of conducting activities within N.Y. and invoke the benefits and protections of N.Y. law.  *Madison Capital Mkts., LLC v. Starneth Europe B.V.*, No. 15-CV-7213, 2016 U.S. Dist. LEXIS 112687, at *24 (S.D.N.Y. Aug. 23, 2016).  "[P]urposeful availment occurs when the locus of contracting or performance is New York or the defendant projects itself into New York for the purpose of creating a business relationship."  *Id.*  If the defendant has transacted business in the forum, then the plaintiff must also show an "articulable nexus" between the business transacted and the cause of action. *DeLorenzo*, 757 F. App'x at 9.

Plaintiff fails to provide evidence demonstrating that NVOAD transacted business and "purposefully availed" itself in N.Y.  As previously stated, Plaintiff merely alleges that (i) NVOAD

has a member in N.Y.; (ii) NVOAD employed two N.Y. residents, including the Plaintiff; and (iii) Plaintiff conducted business on behalf of NVOAD.  Compl. ¶¶ 7, 23-24, 32.  None of these allegations establish that NVOAD was conducting business *in* N.Y. or attempting to create business relationships within the state.

First, New York VOAD is one of fifty-six state and territorial members affiliated with NVOAD and none of those members perform business on behalf of the national organization. Manning Decl. ¶ 9; Miller Decl. ¶¶ 3, 5.  While New York VOAD certainly engages in activities in N.Y., Plaintiff has not and cannot establish that NVOAD has benefitted from those activities or that it exercises extensive control over New York VOAD.  *C.f. Yousef v. Al Jazeera Media Network*, No. 16-cv-6416 (CM), 2018 U.S. Dist. LEXIS 49614, at *35 (S.D.N.Y. Mar. 22, 2018) (finding specific jurisdiction over a parent corporation where it exercised extensive control over its indirect, wholly-owned subsidiary, which was located in the relevant forum).  In contrast to *Yousef*, NVOAD does not exercise any control over New York VOAD.  *See* Manning Decl. ¶ 9. Second, the Director of Operations' residency in New York is immaterial to NVOAD's mission of effectively delivering services to disaster survivors.  Her role is to assist with the functions of the organization on a national basis and she does not have any information or connection to Plaintiff's causes of action.  *See* Manning Decl. ¶ 6.  Thus, her residency in N.Y. is insufficient to show that NVOAD has purposefully availed itself in N.Y.

Lastly, Plaintiff alleges that he conducted business on behalf of NVOAD, which included attending weekly meetings with Manning, submitting written status reports to the Board, and meeting with committees on a monthly basis.  Compl. ¶¶ 29-31.  He further states that he hosted a virtual presentation for NVOAD's national members from his N.Y. home office.  Compl. ¶ 49. Importantly, Plaintiff does not allege that these weekly or monthly meetings took place in N.Y.

Rather, these exchanges took place via email and telephone.  Manning Decl. ¶ 11.  Courts have found that a "plaintiff's activities in New York as [the defendant's] alleged agent cannot serve as the basis for the assertion of jurisdiction over [the defendant]."  *Kulas v. Adachi*, 96 Civ. 6674 (MBM), 1997 U.S. Dist. LEXIS 6868, at *17 (S.D.N.Y. May 12, 1997); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 327 (S.D.N.Y. 2015) ("New York courts have consistently held that the unilateral acts of plaintiffs in the forum state do not support jurisdiction over a nondomiciliary defendant").  Further, the exchange of telephone calls with a N.Y. plaintiff, even if in furtherance of the defendant's out-of-state business activities, are insufficient to sustain jurisdiction pursuant to CPLR 302(a)(1).  *Kulas*, 1997 U.S. Dist. LEXIS 6868, at *20.  Only if those communications "clearly shows that the defendant intends to project itself into ongoing N.Y. commerce" will N.Y. courts sustain jurisdiction.  *Id.* at *20-21.

Plaintiff has offered no evidence that NVOAD was projecting itself into N.Y. commerce. Plaintiff's role at NVOAD was to develop the organization at a national level, not at the state level. Indeed, as the CEO, his role was to lead NVOAD, the national organization.  *See* Manning Decl. ¶ 13.  The Complaint makes no allegation that he was responsible for local state and territorial members.  All of the specific examples Plaintiff provides in the Complaint fail to establish that he transacted business for NVOAD in N.Y., rather it is apparent his duties were focused on work at the national level.  For example, Plaintiff alleges that he helped NVOAD receive a grant for their diversity efforts within the national organization.  Compl. ¶ 86.  He further states that this grant would be used to add a full-time staffer to engage in diversity and inclusion work within NVOAD. Compl. ¶ 87.  Plaintiff was neither working specifically for New York VOAD, nor was he required or asked to engage in business in N.Y.

Finally, it is apparent the virtual presentation hosted from his home office was done because of the COVID-19 pandemic and was done for the benefit of the national organization. These meetings are usually not held in N.Y.; indeed, they are typically held in person and in different states. Manning Decl. ¶ 14. Because Plaintiff has failed to establish that NVOAD was transacting business in N.Y., he cannot show any nexus to his causes of action. As such, specific jurisdiction under CPLR § 302(a)(1) cannot be established over NVOAD.

As for the individual Defendants, section 302(a)(1) confers jurisdiction over them when they have "'exercised some control over the purposeful activity' directed in or to the state." *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 393 (E.D.N.Y. 2018). Here, there is no evidence that Manning, Miller, and Smith—either in their personal or corporate capacity—solicited business in N.Y., individually contracted with any person in N.Y., or conducted any purposeful activity in N.Y. that would otherwise constitute a business transaction during their tenure with NVOAD. Therefore, jurisdiction under CPLR § 302(a)(1) is not permissible as none of the individual Defendants transacted business or exercised control over any purposeful activities in N.Y.

### (2)  Plaintiff Cannot Establish Jurisdiction Over Defendants Pursuant to CPLR § 302(a)(3).

Plaintiff is also unable to show that specific jurisdiction is warranted under CPLR § 302(a)(3). To establish jurisdiction under § 302(a)(3), Plaintiff must show that an injury occurred in N.Y. and Defendants (i) regularly engage in business or other persistent conduct in the state, or (ii) expect or should reasonably expect the act to have consequences in the state and derive substantial revenue from interstate or international commerce. At a bare minimum, the Complaint must "adequately allege a tortious act committed by the defendant." *Landau v. New Horizon Partners, Inc.*, 2003 U.S. Dist. LEXIS 15999, at *23 (S.D.N.Y. Aug. 22, 2003). As explained below in Point III.B, Plaintiff has not adequately alleged a proper claim of retaliation against all

Defendants or a *prima facie* tort claim against Miller and Smith.  Therefore, Plaintiff has not established the bare minimum necessary to exercise jurisdiction over these Defendants.

To the extent this Court determines that a tortious act was in fact committed, Plaintiff still cannot meet the requirements of section 302(a)(3) because he has not established that Defendants engaged in conduct within the state or made substantial revenue from interstate commerce.  Thus, jurisdiction is also improper under CPLR § 302(a)(3).

### ii.     The Exercise of Jurisdiction Is Not Reasonable and Would Violate Due Process and Fairness Requirements

Plaintiff cannot establish personal jurisdiction over Defendants under N.Y.  However, to the extent this Court finds that jurisdiction is proper (which it is not), the Complaint should still be dismissed because exercising jurisdiction over Defendants would violate the constitutional guarantee of due process.  To determine whether exercising jurisdiction is consistent with the Constitution's due process requirements, courts must undertake a "minimum contacts" and "reasonableness" inquiry.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).  Under the "minimum contacts" inquiry, courts must assess "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  *Id.*; *See also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Under the "reasonableness" inquiry, courts must determine "whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Chloe*, 616 F.3d at 164  Both inquiries fail.

The minimum contacts inquiry fails because, as established above in Point III.A.i, Defendants have little to no contact with the state of N.Y. and have not purposefully availed themselves of the benefits of N.Y. law.

Under the "reasonableness" analysis, courts must evaluate the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum

state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe*, 616 F.3d at 164.

As to the first factor, Defendants will be burdened if they are required to litigate this case in N.Y.  Manning, Miller, and Smith are not residents of N.Y. and do not travel to N.Y. for business or personal reasons at all.  Manning Decl. ¶ 2; Smith Decl. ¶ 3; Miller Decl. ¶ 2.  NVOAD has no offices or personnel in N.Y., other than one employee who has no information about this litigation. Thus, this factor leans in favor of Defendants because of the burden they would face in having to travel to and defend this suit in N.Y.  The second and third factors sway in favor of Plaintiff because he lives in the forum and, generally, states have a manifest interest in providing effective means of redress for its residents.  *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

In evaluating the fourth factor, courts "generally consider where witnesses and evidence are likely to be located."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996).  At least four of the non-party individuals referenced in the Complaint are located in Maryland, Washington, D.C., Virginia, and Texas.  Manning Decl. ¶ 7.  These potential witnesses do not reside in N.Y. and would be burdened if they had to appear in a N.Y. court.  While technology has certainly eased what would have been a serious burden decades ago, this factor demonstrates that there would be a burden nonetheless.  Thus, this factor sways in favor of Defendants.  *See Metro. Life Ins.*, 84 F.3d at 574 (noting the difficulties associated with requiring a corporation to defend suit in a state where it was not incorporated and had no offices, records, files, or witnesses with information about the litigation).

Finally, while the fifth factor does not necessarily lean in favor of or against exercising personal jurisdiction over Defendants, as a matter of public policy, this Court should find in favor of Defendants. Hauling a national not-for-profit organization and a select number of individual board members into a distant forum in which they have no contacts and never purposefully directed their efforts to create any business relationships is not only unfair but unreasonable. A ruling in Plaintiff's favor would essentially require Defendants to expend their precious resources to defend a meritless suit merely because of the Plaintiff's residency and individual actions in N.Y., rather than focusing on the extraterritorial conduct of Defendants themselves. This would undoubtedly set a dangerous precedent as it runs afoul of longstanding principles. *See Rush v. Savchuk*, 444 U.S. 320, 327 (1980) (stating that "the inquiry [for personal jurisdiction] must focus on 'the relationship among the defendant, the forum, and the litigation,'" and notably not on the plaintiff's conduct or relationship to the forum). Further, it would be inefficient and costly to require all relevant parties to travel great lengths for this case when more convenient forums are available and more appropriate. Thus, this Court should not exercise personal jurisdiction over Defendants.

The exercise of personal jurisdiction would be unreasonable, and the Complaint should be dismissed because Plaintiff has not provided sufficient evidence to show that under N.Y. law courts can exercise jurisdiction over Defendants or that exercising jurisdiction would comport with the constitutional guarantee of due process.

**B.** **If This Court Finds That There Is Personal Jurisdiction, Then The Plaintiff's Complaint Should Be Dismissed For Failure To State A Claim**

The allegations raised throughout the Complaint are devoid of any merit and should be dismissed. Plaintiff's retaliation claim fails because his alleged advocacy for diverse policies at NVOAD does not constitute protected activity and his reliance on temporal proximity to establish causation is insufficient. Further, Plaintiff's aiding and abetting claim fails because there is no

underlying retaliation claim and no evidence the Smith actually participated in any misconduct. Finally, the *prima facie* tort claim also fails because Plaintiff has not established that Smith or Miller acted solely with the malicious motive to harm him.

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. *Iqbal*, 556 U.S. at 679. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* at 678. Under this standard, Plaintiff cannot state a plausible claim for relief.

### i.   Plaintiff Has Failed to State a Cognizable Claim of Retaliation Against NVOAD, Miller, and Manning

It is well established that a retaliation claim requires Plaintiff to show he engaged in protected activity and that there was a causal connection between the protected activity and his termination. Plaintiff cannot establish either element.

In support of his claim of unlawful retaliation under the NYCHRL, Plaintiff alleges that he was terminated in retaliation for advocating for diversity and inclusion within NVOAD. Compl. ¶¶ 91, 94, 103. To state a claim of unlawful retaliation under NYCHRL, Plaintiff must plead and ultimately prove that (i) he participated in protected activity of which his employer was aware; (ii) action was taken that would be reasonably likely to deter a person from engaging in protected activity; and (iii) there is a causal connection between the protected activity and the action taken. *See* N.Y.C. Admin. Code § 8-107(7); *Goonewardena v. New York Workers Comp. Bd.*, 258 F. Supp. 3d 326, 346 (S.D.N.Y. 2017), *aff'd*, 788 F. App'x 779 (2d Cir. 2019). Plaintiff's claim fails because, as a matter of law, he has not engaged in protected activity to support a cognizable claim of retaliation or established a causal connection between the alleged conduct and his termination.

Under the NYCHRL, a plaintiff engages in "protected activity" when they oppose "any practice made an unlawful employment practice by the NYCHRL" or participate "in any manner in an investigation, proceeding, or hearing under the NYCHRL." *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 580 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).  In other words, the complained of practice must be related to one's employment and made unlawful by the discriminatory statute.  *See* N.Y.C.H.R.L. § 8-107.  While an employee need only have a good-faith belief that he or she engaged in protected activity, one cannot have held a reasonable belief where he or she "neither pointed out discrimination against particular individuals nor discriminatory practices by [the employer]." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *see also Hernandez v. Weill Cornell Med. Coll.*, 2015 NY Slip Op 51022(U), ¶ 2, 48 Misc. 3d 1210(A), 18 N.Y.S.3d 579 (N.Y. Sup. Ct. July 6, 2015) (dismissing a retaliation claim under NYCHRL because the plaintiff was unable to point to unlawful discriminatory conduct engaged in by her employer).

Merely advocating for policies or programs that could mitigate disparate treatment or discrimination is not protected activity.  *Moazzaz v. Metlife, Inc.*, No. 19-CV-10531 (JPO), 2021 U.S. Dist. LEXIS 40776, at *40 (S.D.N.Y. Mar. 4, 2021) (Oetken, J.).  In *Moazzaz*, the plaintiff brought a retaliation claim under the NYCHRL against the defendants for failing to promote her and terminating her after she called on the company to revamp their recruiting strategy to increase diversity among employees, in addition to other complaints.  *Id.* at *39.  The court found that "lack of diversity alone is not actionable, and anti-discrimination laws do not require employers to maintain diversity programs."  *Id.* at *40.  The plaintiff's complaints regarding diversity simply did not constitute protected activity.  *Id.*  The court ultimately dismissed the NYCHRL retaliation claim because, even though plaintiff made other complaints that constituted protected activity, the

alleged retaliation occurred more than three months later, which was insufficient to show causation. *Id.* at *40-42.

Similar to *Moazzaz*, Plaintiff's recommendations to increase diversity within NVOAD's membership is not actionable and does not demonstrate that he engaged in any protected activity. Indeed, the Complaint is devoid of *any* factual allegations that NVOAD, Miller, or Manning engaged in unlawful discriminatory practices forbidden by the NYCHRL or that Plaintiff pointed out discrimination against particular individuals.  Plaintiff claims he made recommendations for NVOAD to increase diversity within its *membership* as a way of opposing NVOAD's alleged adverse treatment of historically underrepresented groups.  Compl. ¶¶ 44-45.  However, diversity among NVOAD's membership does not concern or relate to employment, and even if it did, as explained in *Moazzaz*, anti-discrimination laws do not require employers to maintain diversity programs.

Plaintiff further alleges that he communicated with (i) the Board's Human Resources Task Force (the "HR Task Force"), which consisted of four non-parties, and (ii) Jeffrey Worley, counsel for NVOAD, to complain about Miller's alleged harassment against him and the hostile work environment.  Compl. ¶¶ 60-63.  The Complaint does not allege any conduct that would show an inkling of discriminatory or harassing conduct towards Plaintiff.  The only allegation made is that Miller disagreed with Plaintiff's use of the phrase "white privilege" during a presentation.

Notably, Miller is African American and was personally offended by the way in which Plaintiff used the phrase and vocalized his disapproval.  Miller Decl. ¶ 7; Compl. ¶ 54.  This is not discriminatory conduct prohibited under NYCHRL.  Plaintiff has made mere conclusory allegations with no factual support of unlawful conduct.  Thus, Plaintiff could not have engaged in protected activity when he made a complaint to the HR Task Force or Worley.  As such, Plaintiff

cannot prove a valid retaliation claim.

Even if Plaintiff engaged in protected activity, he relies solely on temporal proximity to establish a causal connection between his alleged complaints and his termination.  Temporal proximity, standing alone, is insufficient to establish causal connection.  *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011).  Here, Plaintiff advocated for diversity within NVOAD's membership in or around June 2020.  Compl. ¶ 44.  Plaintiff wrote his complaint to the HR Task Force in or around June 23, 2020 and spoke to Worley on July 8, 2020.  Compl. ¶¶ 60, 63.  Yet, Plaintiff was terminated five months later on December 7, 2020.  Compl. ¶ 77; *see Moazzaz*, 2021 U.S. Dist. LEXIS 40776, at *40-41 (noting that claims of retaliation are routinely dismissed when as few as three months elapse between protected activity and the alleged retaliatory act).  Thus, Plaintiff has failed to establish a causal connection for his retaliation claim because five months is insufficient to show temporal proximity and he has offered no other evidence to support the claim.

In sum, the Complaint fails to allege a valid retaliation claim because there is insufficient evidence that Plaintiff engaged in protected activity and, even if he had, there is no causal connection between the alleged complaints and his termination.  Thus, Counts I and II should be dismissed against NVOAD, Manning, and Miller.

### ii. Plaintiff Has Failed to State a Valid Aiding and Abetting Claim Against Smith

Plaintiff cannot establish that Smith participated in any unlawful conduct.  Under the NYCHRL, it is an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden" under the respective human rights laws.  *See* N.Y.C. Admin. Code § 8-107(6).  Accessory liability is only available when a primary violation has been established.  *Moore v. Verizon*, No. 13-cv-6467 (RJS), 2016 U.S. Dist. LEXIS 16201, at *15

(S.D.N.Y. Feb. 5, 2016).  Further, an individual can only be found liable for aiding and abetting if the plaintiff shows that they "actually participated" in the unlawful conduct by the employer. *McHenry v. Fox News Network, LLC*, 2020 U.S. Dist. LEXIS 238582, at \*63 (S.D.N.Y. Dec. 18, 2020).

Plaintiff alleges that Smith violated the NYCHRL by aiding and abetting in the alleged retaliatory termination.  This claim should be dismissed because, as shown above, Plaintiff does not have a valid retaliation claim.  *See supra* Section B(i).  As such, Smith cannot be held liable for aiding and abetting in the absence of a valid retaliation claim.  Further, even if Plaintiff has a valid claim with respect to his termination, which he does not, the aiding and abetting claim must be dismissed because there is no evidence that Smith played any role in the decision to terminate Plaintiff's employment.

As previously explained, Smith resigned from the Board five months before Plaintiff's termination.  *See* Manning Decl. ¶ 16; Smith Decl. ¶ 2; Compl. ¶ 77.  Smith played no role in Plaintiff's termination and could not have possibly aided and abetted in any alleged misconduct. *See* Smith Decl. ¶ 2.  Plaintiff also alleges that he complained to the Board regarding Smith's transmittal of a memorandum to persons outside of the organization and that the transmittal could have damaged his employment.  Compl. ¶ 44.  However, there are no allegations demonstrating that this alleged transmittal of information in June 2020 had any impact on Plaintiff's termination five months later or that this alleged conduct was done purposefully so as to terminate Plaintiff. As such, the aiding and abetting claim asserted against Smith must be dismissed.

### iii. Plaintiff Has Failed to State a Valid *Prima Facie* Tort Claim Against Smith and Miller

Plaintiff cannot establish that Defendants acted with the sole motivation to injure him.  To establish a *prima facie* tort claim, a plaintiff must show: (1) intentional infliction of harm, (2)

resulting in special damages, (3) without excuse or justification and motivated solely by malice, and (4) by an act or series of acts that would otherwise be lawful.  *Backer v. Cooperatieve Rabobank U.A.*, 338 F. Supp. 3d 222, 232 (S.D.N.Y. 2018).  Courts have further indicated that a plaintiff must show that "the *sole* intent" was to cause harm.  *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009) ("[M]otives other than disinterested malevolence, such as profit, self-interest, or business advantage will defeat a prima facie tort claim").

Plaintiff claims that Smith intentionally inflicted harm by publicly distributing a confidential memorandum from Plaintiff's personnel file.  He also alleges that Miller intentionally inflicted harm by feigning outrage at Plaintiff's use of the phrase "white privilege."  As explained below, the Complaint abstractly recites the elements of a *prima facie* tort claim but does not set forth any specific factual allegations to support this claim.

Plaintiff's tort claim must be dismissed because he has not established that Smith or Miller intended to inflict harm or that their actions were motivated by malice.  With regard to Smith, the Complaint shows that he is a member of the American Red Cross.  Compl. ¶ 14.  Smith expressed his belief that the American Red Cross had been unfairly singled out for criticism in the Bloomberg article wherein Plaintiff stated they did not have the resources to sustain a response to the COVID-19 disaster.  Compl. ¶¶ 35-36.  Plaintiff states that Smith notified his American Red Cross colleagues of the Board's action in response to Plaintiff's critical comments of them.  Compl. ¶ 40.  This does not demonstrate a malicious intent to harm Plaintiff.  At best, it shows that Plaintiff's comments strained the relationship between NVOAD and the American Red Cross, and Smith was keeping the American Red Cross abreast of developments to show NVOAD's efforts to repair that relationship.  There are no allegations of malicious intent, thus the *prima facie* tort claim fails.

Similarly, Plaintiff has failed to show any malicious motive on Miller's behalf.  Indeed,

21

Miller complained that Plaintiff's use of the phrase "white privilege" showed Plaintiff's "failure to understand cultural and racial sensitivity."  Compl. ¶ 53.  Plaintiff admits that Miller's email only showed that he had personally taken offense, but conveniently omits how Miller, an African American, would feel when the term "white privilege" is utilized improperly.  Compl. ¶¶ 54-55.  It is apparent that Miller was uncomfortable by Plaintiff's use of the term and merely emailed Plaintiff to express his feelings regarding the situation.  There is nothing in the Complaint to indicate that Miller had any malicious motive to ruin Plaintiff's career.  Thus, this claim should be dismissed.

In sum, the Complaint abstractly recites the elements of a *prima facie* tort claim but does not set forth any specific factual allegations in support of this claim.  Such conclusory allegations are insufficient and this Court should dismiss Plaintiff's *prima facie* tort claims against Smith and Miller.

**IV.    CONCLUSION**

For the foregoing reasons, the Court should dismiss this case for lack of personal jurisdiction or, in the alternative, for failure to state a claim.

Dated:  April 9, 2021
        Melville, New York

/s/ Daniel Gomez-Sanchez
Daniel Gomez-Sanchez
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747
(631) 247-4700
dsgomez@littler.com

Adriana H. Foreman
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022
(212) 583-9600
aforeman@littler.com

*Attorneys for Defendants National Voluntary Organizations Active in Disaster, Inc., Michael Manning, Mark J. Smith, and Warren Miller*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY FORRESTER,

                  Plaintiff,

        -against-

NATIONAL VOLUNTARY ORGANIZATIONS
ACTIVE IN DISASTER, INC., MICHAEL
MANNING, MARK J. SMITH, and WARREN
MILLER

                Defendants.

Case No. 1:21-cv-00422-JGK

**CERTIFICATION OF COMPLIANCE**

      I hereby certify that this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint includes a total of 6,946 words and complies with all formatting rules as required by the *Individual Practices of Judge John G. Koeltl*, dated May 28, 2020.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 9, 2021
        Melville, New York

                                  */s/ Daniel Gomez-Sanchez*
                                  Daniel Gomez-Sanchez

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY FORRESTER,

              Plaintiff,

       -against-

NATIONAL VOLUNTARY ORGANIZATIONS
ACTIVE IN DISASTER, INC., MICHAEL
MANNING, MARK J. SMITH, and WARREN
MILLER

              Defendants.

Case No. 1:21-cv-00422-JGK

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on April 9, 2021, I caused to be served via ECF upon Plaintiff's counsel a true and correct copy of the (i) Notice of Defendants' Motion to Dismiss Plaintiff's Complaint, (ii) Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint; (iii) Declaration of Michael G. Manning in Support of Defendant's Motion to Dismiss Plaintiff's Complaint; (iv) Declaration of Warren Miller in Support of Defendant's Motion to Dismiss Plaintiff's Complaint; and (v) Declaration of Mark J. Smith in Support of Defendant's Motion to Dismiss Plaintiff's Complaint.

       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 9, 2021
       Melville, New York

                                 */s/ Daniel Gomez-Sanchez*
                                Daniel Gomez-Sanchez